**Anthony AIDONE, Plaintiff,**

v.

**NATIONWIDE AUTO GUARD, LLC and Hale Camerman, Defendants.**

Case No. 13–60893–CIV.

United States District Court, S.D. Florida.

Nov. 26, 2013.

Joshua Kelly Moran, Glasser & Kleppin, Plantation, FL, for Plaintiff.

Jeffrey Mitchell Goodz, Remer & Georges–Pierre, PLLC, Fort Lauderdale, FL, for Defendants.

## OMNIBUS ORDER

LURANA S. SNOW, United States Magistrate Judge.

THIS CAUSE is before the Court on Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's First Request for Production to Corporate Defendant (ECF No. 30), and Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's Second Request for Production and First Set of Interrogatories (ECF No. 32) which were referred to Lurana S. Snow, United States Magistrate Judge. Both motions are fully briefed and are ripe for consideration.

▊ This is an action for unpaid minimum wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and for unjust enrichment. The Plaintiff worked for the Defendants selling automobile insurance policies over the telephone. An issue in this litigation is whether the Plaintiff was Defendants' employee or an independent contractor. According to the Plaintiff, the discovery requests at issue are his effort to establish the "economic realities" of the relationship between the Plaintiff and the Defendant.[1]

---

1. The "economic realities" test is employed in FLSA cases to determine whether an individual is an employee versus an independent contractor for purposes of the Act. An employee is an individual "who as a matter of economic reality [is] dependent upon the business to which [he] render[s] service." *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 299 (5th Cir.1975). The Eleventh Circuit has adopted several factors as a guide for making the determination, which are not exhaustive. These are: "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; [and] (6) the extent to which the service rendered is an integral part of the alleged employer's business." *Altman v. Sterling Caterers*, 879 F.Supp 2d 1375, 1380 (S.D.Fla.2012) *citing Freund v. Hi–Tech Satellite, Inc.*, 185 Fed.Appx. 782, 783 (11th Cir. 2006). "An employee is most dependent on whoever controls the nature of his work and the permanency of his position." *Id.* at 1381.

Pursuant to the Court's Scheduling Order, discovery closes on November 27, 2013. (DE 11) The Plaintiff requests that the Court compel the Defendant, Nationwide Auto Guard, LLC to provide responsive answers and documents prior to the planned depositions of the defendants in early November, 2013[2].

## I. *Plaintiff's Motion to Compel Discovery Pursuant to First Request for Production to Corporate Defendant (DE 30)*

During the briefing process, the parties resolved their differences with respect to all of the issues raised in the instant motion except with respect to Requests 11 and 27. The Court addresses each in turn.

*Request 11*—The personnel files of all employees who are similarly situated to the Plaintiff (e.g. held the same job title, position, or had similar duties, including but not limited to fronters, closers, salespeople, solicitors, etc.) in the past three (3) years, within the Southern District of Florida.

*Objections and/or Response*—Defendant objects to request number 11 as overly broad, unduly burdensome, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, harassing, and violating the privacy interests of others who have provided services to/for Defendant, as Plaintiff is going on a fishing expedition for information to try to turn this matter into a collective action, but this matter has not been styled as a collective action. Even if it were styled as a collective action it would be Plaintiff's obligation to file Opt-in notices for each of the allegedly similarly situated individuals for whom it seeks information through those individuals approaching Plaintiff/Plaintiff's counsel and seeking to join this action, as neither Plaintiff, as an agent of his attorneys, or Plaintiff's counsel, are permitted to solicit anyone to join this action. Having failed to style this matter as a collective action, and having failed to file any opt-in notices on behalf of any other allegedly similarly situated individuals, other allegedly similarly situated individual information is not discoverable.

According to the Plaintiff, contrary to Defendant's assertion, the information requested is relevant for more than certifying this case as a collective action. The personnel files of similarly situated employees will likely contain information concerning how similarly situated employees were paid in comparison to the Plaintiff, will likely contain evidence of how much control the Defendant exercised over similarly situated employees, and may contain evidence demonstrating willfulness for purposes of the FLSA. Plaintiff asserts that because the Defendant claims that the Plaintiff was sometimes paid hourly and sometimes not, depending on his job classification, evidence of how similarly situated employees were actually paid is highly relevant.

Defendant has agreed to provide documents showing that other closers were paid the same as the Plaintiff, but continues to assert that the request is otherwise overbroad. Defendant asserts that Plaintiff's conferral letter limited the request to "information regarding other employees of the Defendant who suffered and/or complained about FLSA violations which ultimately resulted in documents being submitted to the Department of Labor," (DE

---

2. The Court notes that on October 23, 2013, Plaintiff's counsel moved to withdraw. (DE 38) The Court granted the motion. (DE 42) The Plaintiff is presently proceeding *pro se*, and his former attorney furnished his mailing address on November 12, 2013. (DE 43) It is unclear how this turn of events effects the planned depositions of the Defendants.

30–4) and states that it has no responsive documents to the request thus limited. According to the Defendant, even if the information in the personnel files were to demonstrate that others were paid the same or differently than the Plaintiff, this would neither support nor undermine the Plaintiff's claim. In other words, the information would not demonstrate whether Plaintiff was himself exempt or non-exempt, whether he was an employee or independent contractor, or whether he was properly compensated. Nor can the information establish willfulness, because it would not establish that the Defendant knew that the way it was paying the Plaintiff was in violation of the FLSA. Finally, Defendant contends that the request, as framed, which seeks the entire personnel files of virtually every person who worked for the Defendant for the last three years is overbroad and raises privacy concerns.

The Plaintiff filed a reply brief reiterating that he is merely seeking information which may lead him to individuals with knowledge regarding the Defendant's business and control over the Plaintiff. He is not seeking the information as evidence in support a collective action. Plaintiff disputes that he should be limited to the arguments raised in his conferral letter, pointing out that, as he certified when he filed the motion, he attempted on multiple occasions to confer with Defendants' counsel by phone, and would have discussed his arguments in more detail, but none of the phone calls was returned. Finally, he contends that the Defendant lacks standing to raise privacy concerns with respect to the individual personnel files.

■ The Court agrees with the Plaintiff that discovery concerning similarly situated individuals who worked for the Defendant may lead to the discovery of admissible evidence and is potentially relevant as broadly defined by the federal rules of civil procedure. *Oppenheimer Fund, Inc. v.*

*Sanders,* 437 U.S. 340, 351–52, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). The parties appear to agree that the Plaintiff worked as both a fronter and a closer during the relevant time period. (DE 36–1, ¶¶ 16, 17; DE 36–2, ¶ 4) Other individuals who have held those positions may be able to provide evidence regarding the level of control the Defendant exerted with respect to the duties Plaintiff performed, which evidence would be a factor to be considered in determining whether Plaintiff should be treated as an employee versus an independent contractor for purposes of the FLSA. *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

■ The Plaintiff is also correct that the Defendant lacks standing in this litigation to assert the privacy rights of third parties. *Adelman v. Boy Scouts of America,* 276 F.R.D. 681, 694 (S.D.Fla.2011). Further, any privacy concerns raised by the third party's themselves could be addressed via the entry of a stipulated confidentiality order.

Accordingly, regarding Request 11, the Defendant shall produce the personnel files of all other fronters and closers it employed in the Southern District of Florida in the last three years, subject to a confidentiality order which the parties are directed to submit for entry by the Court.

***The other request in dispute is Request 27:***

*Request 27* All "scripts" or other documents which Plaintiff was required to read or use while speaking with customers or prospective customers on the telephone.

*Objections and/or Response* Defendant objects to interrogatory (sic) number 27 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence as Plaintiff did not follow a script. Any such scripts moreover, are confidential and proprietary.

■ The Plaintiff argues that the Defendant's objections are boilerplate in violation of the Court's General Order on Discovery Objections and Procedures. (DE 12) Additionally, the Plaintiff contends that he was required to follow a script when talking with customers, and that he was harshly reprimanded when he failed to do so. The "script" Plaintiff seeks is central to establishing the Defendant's control and his own lack of autonomy supporting his assertion that he was an employee rather than an independent contractor for purposes of the FLSA. Any confidentiality/trade secret concerns can be addressed by the entry of a stipulated confidentiality order.

The Defendant offered to produce its one page sales script pursuant to the Plaintiff's draft confidentiality order, subject to certain changes made by the Defendant.[3] The Plaintiff argues that the Defendant should produce the multiple scripts it required the Plaintiff and other employees to use.

Because the Court agrees that any "scripts" the Plaintiff was required by the Defendant to use during the course of his employment would be reasonably calculated to lead to the discovery of evidence admissible to show the level of control exerted by the Defendant over the Plaintiff, the Defendant's objections based upon relevance are overruled, and all such scripts shall be produced subject to a confidentiality order.

## II. *Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's Second Request for Production and First Set of Interrogatories to Defendant Nationwide Auto Guard, LLC. (DE 32)*

The Plaintiff seeks better responses to Requests for Production 3 and 15 from his Second Request for Production of Documents, and Interrogatories 3, 4, 10 and 17 from his First Set of Interrogatories. The Court addresses each in turn.

*Request 3*—During the relevant time period, the complete personnel file relating to each of the following persons, including but not limited to the records pertaining to duties, promotion, salary, hours worked, overtime, commission, bonuses, evaluations, discharge, layoff or retirement:

(a) All current and former employees similarly situated to the Plaintiff, including but not limited to: fronters, closers, salespeople, all employees holding the same title/position as the Plaintiff, etc.

(b) All management personnel

(c) All corporate officers of the Defendant

(d) All supervisors/managers/dispatchers/bosses who supervised and/or directed the Plaintiff during his employment with the Defendant.

*Objections and/or Response* Defendant objects to request number 3 as overly broad, unduly burdensome, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, harassing, and violating the privacy interests of others who have provided services to/for Defendant. Request 3, as an initial matter, is not limited in time. In addition, Plaintiff is going on a fishing expedition for information to try to turn this matter into a collective action as respects others alleged to be similarly situated to Plaintiff, but this matter has not been styled as a collective action. Even if it were styled as a collective action, it would be Plaintiff's obligation to file Opt-in notices for each of the allegedly similarly situated individuals

---

3. The Court notes that as of the date of this Order, the parties have not submitted a Stipulated Confidentiality Order for entry by the Court.

for whom it seeks information through those individuals approaching Plaintiff/Plaintiff's counsel and seeking to join this action, as neither Plaintiff, as an agent of his attorneys', or Plaintiff's counsel are permitted to solicit anyone to join this action. Having failed to style this matter as a collective action, and having failed to file any opt-in notices on behalf of any other allegedly similarly situated individuals, other allegedly similarly situated individual information is not discoverable. As to all other individuals identified, the information with respect to such individuals fails to relate to any identifiable issue in this matter, and does not make it any more probable than not that a violation of law occurred.

The Court has already determined that the personnel files of current and former fronters and closers for the relevant time period shall be produced. The only remaining issue is whether the personnel files of management personnel, corporate officers and Plaintiff's supervisors should also be produced. According to the Plaintiff, he needs the files of his supervisors and of the corporate officers to prove individual liability under the FLSA.

According to the Defendant, the Plaintiff is aware that Defendant has only one officer, Defendant Hale Camerman. Defendant contends that the Plaintiff does not need the contents of Mr. Camerman's entire personnel file.

 The FLSA contemplates the imposition of individual liability upon those who control a corporation's day to day functions, including its financial affairs. *Lamonica v. Safe Hurricane Shutters,* 711 F.3d 1299, 1313 (11th Cir.2013). For a supervisor to qualify as an employer under the FLSA, he or she must have significant involvement in the day to day operation of the business or have some direct responsibility for the supervision of the employee.

*Id.* Such control can be inferred from the exercise of general supervisory powers or the exercise of control over other employees. *Id.*

 Because the Court agrees with the Plaintiff that individuals with involvement in the day to day operation of Defendants' business, and those with direct responsibility for supervision of the Plaintiff, may be individually liable under the FLSA, the information contained in their personnel files may also lead to the discovery of admissible evidence, and should be produced subject to a confidentiality order to be submitted by the parties for entry by the Court. Accordingly, the Defendant's objections with respect to Request 3 are overruled.

*Request 15*—All documents and communications relied upon in drafting the Defendants' Answer and Affirmative Defenses.

*Objections and/or Response*—Defendant objects to Request number 15 on the basis of the attorney-client privilege given that the nature of the facts and documents which applied to them were explained during privileged communications between Defendant and its legal counsel. In addition, Plaintiff has currently pending a Motion to Strike Defendants' Amended Affirmative Defenses, and as such, Defendants are uncertain what affirmative defenses will be remaining after the court's determination. As respects documentation supporting the current affirmative defenses, however, please see documents produced herein, documents attached to Defendant Nationwide Auto Guard, LLC's Objections and/or Responses to Plaintiff's First Set of Interrogatories to Defendant Nationwide Auto Guard, LLC, and documents attached to Defendant Nationwide Auto Guard, LLC's Objections and/or Responses to Plain-

tiff's First Request for Production of Documents to Defendant Nationwide Auto Guard, LLC.

According to the Plaintiff, during the conferral process, the Defendant agreed to provide a privilege log or produce any documents that have not been produced. It has done neither. Defendant asserts it has no additional non-privileged information, and the only remaining privileged documents consist of e-mails between counsel and client from the date Plaintiff filed his initial Charge of Discrimination with the Equal Employment Opportunity Commission on June 29, 2012, to the present. Defendant asserts that preparing a privilege log has been burdensome and time consuming.

■ The Court notes that in this district, a privilege log is required with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection, except written and oral communications of a party and its counsel, and work product material created after commencement of the action. Southern District Local Rule 26.1(g)(3)(C). For purposes of the FLSA, an action commences on the date when the complaint is filed. 29 U.S.C. § 256. According to the Defendant, the only privileged documents it is withholding on the basis of privilege were created after the Plaintiff filed his initial charge of discrimination with the Equal Employment Opportunity Commission. Accordingly, the Defendant shall provide a privilege log for all documents withheld on the basis of privilege created after the initial charge of discrimination and prior to April 16, 2013, the date the Plaintiff filed his complaint.

*Interrogatory 3*—Please list all employees who were similarly situated to the Plaintiff (e.g., held the same job title, position, or had similar duties to the Plaintiff, including but not limited to openers, fronters, closers, salespeople, etc.) during the Plaintiff's employment with the Defendant, and their respective dates of employment. Please include those employees who are still employed by the Defendant. Please list their name, position/title, rate of pay, work schedule, hours worked, reason for leaving/reason for being fired, address, phone number, and e-mail address.

*Objection/Response*—Defendant objects to interrogatory 3 as overly broad, unduly burdensome, vague, ambiguous, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and harassing. Plaintiff's interrogatory is nothing more than a fishing expedition to locate additional plaintiffs. This matter, however, has not been styled as a collective action. If Plaintiff is seeking the identities of individuals with potential knowledge of the matters at issue, then Plaintiff should so ask as it may very well be that allegedly "similarly situated" individuals may not have knowledge of the issues presented by this case.

Because the Court has already determined that this information with respect to employees who had the same job title as the Plaintiff (i.e. fronters and closers), is reasonably calculated to lead to the discovery of admissible evidence, the Defendant shall respond to Interrogatory 3, limited to information pertaining to fronters and closers.

*Interrogatory 4*—During the Plaintiff's employ with the Defendant, please explain what were the Plaintiff's job duties, responsibilities, job description(s), rate(s) of pay, commissions, any pay raises or demotions/deductions received and the reasons therefor, any disciplinary action received and the reasons therefor, instructions received regarding

work in excess of forty (40) hours in a work week, and locations where Plaintiff's job/work assignments required him to travel. Please clearly detail the dates of any changes in Plaintiff's pay, commissions, hourly rate, and state why such changes were made.

*Objections and/or Response*—As a closer Plaintiff was to place customers in proper coverage, provide payment options, obtain payment, and close the deal correctly. As a fronter, Plaintiff was to place customers in the proper coverage and provide payment options. As a fronter, Plaintiff's remuneration was $10.000 per hour, $50.00 per sale, and cash incentives which varied. As a closer, Plaintiff's remuneration was 20 percent of the down payment collected at a cap of $200.00 per deal. Cash incentives which also varied. As a fronter and a closer, Plaintiff's remuneration was $10.00 per hour, $50.00 per sale, and commission, as long as he fronted 3 sales per week. If he failed to front 3 sales per week, he did not get the $10.00 per hour. From February 2011 until October 2011 Plaintiff was a fronter and a closer. From October 2011 forward, Plaintiff was only a closer, with the option to be paid as a fronter also if he provided fronting services. A closer could be penalized if a customer's information was not correct, if a customer was put into the wrong coverage, if the closer used the mute button, or if the closer engaged in the personal use of the internet. Penalties were as follows: a) Use of the internet—$250.00, b) Use of the mute button—$100.00, c) **Others**—$200.00. No instructions given for providing services greater than 40 hours per seek because workers were independent contractors and because no one provided services more than 40 hours per week. No travel.

(emphasis supplied).

The Plaintiff asks that the Defendant supplement its response by defining "others." Defendant's counsel responds that "others" refers to a failure to obtain correct customer information, falsification of customer information, and/or a failure to place customers in the right coverage. The Defendant shall supplement its response to Interrogatory 4 to reflect this clarification.

*Interrogatory 10*—Please state and fully set forth all facts and legal justifications to support each and every Affirmative Defense set forth in Defendant's Answer, Defenses, and Affirmative Defenses. Please specifically identify all documents relied upon in your response, and state which documents apply/support each respective Affirmative Defense.

*Objections and/or Response*—Defendants objects to interrogatory number 10 on the basis of the attorney-client privilege given that the nature of the legal defenses and facts which applied to them were explained during privileged communications between Defendant and its legal counsel. In addition, Plaintiff has currently pending a Motion to Strike Defendants' Amended Affirmative Defenses, and as such, Defendants are uncertain what affirmative defenses will be remaining after the court's determination. As respects the facts supporting the current affirmative defenses, however, please see Defendants' First Amended Answer and Affirmative Defenses.

The Plaintiff contends, as he did with respect to Request 15, that the Defendant's privilege objection is without merit, and is waived in any case by the failure to provide a privilege log. Plaintiff argues that the objection with respect to the Plaintiff's pending motion to strike amended affirmative defenses is also without merit.

Defendant asserts that the facts supporting the affirmative defenses are set forth in its Amended Answer and Affirmative Defenses. (DE 18) Defendant does not have any additional facts to provide. Non-privileged documents identified in response to Request 15 are also responsive to Interrogatory 10.

On November 15, 2013, the Court entered an order striking Defendants' second, third, fourth, fifth, sixth, eighth, tenth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth, affirmative defenses. The Defendant has been given until November 25, 2013 to file a Second Amended Answer. After it has done so, it shall amend its response to Interrogatory 10, and to the extent that the Defendant intends to rely on privilege to withhold responsive information, it shall produce a privilege log with respect to any communications which occurred prior to the April 16, 2013 commencement of this action. To the extent that Defendant asserts that it has no further facts to provide other than those it sets forth in its Second Amended Answer and Affirmative Defenses, its amended response to Interrogatory 10 shall make this clear.

*Interrogatory 17*—Did you ever order, tell, communicate, or insinuate that the Plaintiff or other employees of the Defendant should call customers whom the Defendant already knew were covered by a warranty/policy and attempt to resell them another warranty/policy? If so, state the reason for doing this.

*Objections and/or Response*—Defendant objects to interrogatory number 17 as irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and harassing. The requested information has nothing to do with whether Plaintiff was an independent contractor or employee or whether he was paid for all hours worked, or any other claim or defense in this matter.

■ The Plaintiff contends that a response to this interrogatory would be reasonably calculated to lead to the discovery of evidence demonstrating the level of control exercised by the Defendant over the Plaintiff, supporting Plaintiff's assertion that he was an employee rather than an independent contractor. Defendant characterizes the interrogatory as harassing.

The Court agrees with the Plaintiff that an answer to this interrogatory, if in the affirmative, would provide evidence of the level of control exerted by the Defendant over the Plaintiff, which in turn, would be relevant to whether the Plaintiff should be treated as an employee or independent contractor for purposes of the FLSA. However, the Defendant's reason for making such a requirement would be of less relevance. Accordingly, the Defendant shall serve a response to the first part of Interrogatory 17.

Being fully advised, it is hereby

ORDERED AND ADJUDGED that the Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's First Request for Production to Corporate Defendant (DE 30) and the Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's Second Request for Production and First Set of Interrogatories (DE 32) are each GRANTED IN PART as follows:

1. The parties shall confer with each other with respect to a Stipulated Confidentiality Order, and, on or before December 4, 2013 submit their proposed order to the Court.

2. Within five days of the entry of a stipulated confidentiality order, the Defendant shall produce the personnel files of the following categories of individuals employed by the Defendant in the Southern District of Florida in the last three years: all fronters, closers, management person-

nel, corporate officers, and individuals who supervised and/or directed the Plaintiff.

3. Within five days of the entry of a stipulated confidentiality order, the Defendant shall produce all "scripts" the Plaintiff was required to read or use while speaking with customers or prospective customers on the telephone.

4. On or before December 9, 2013, the Defendant shall produce a privilege log for all documents and communications withheld on the basis of privilege created prior to the April 16, 2013 commencement of this action.

5. On or before December 9, 2013, the Defendant shall serve a response to Interrogatory 3.

6. On or before December 9, 2013, the Defendant shall supplement its response to Interrogatory 4 to reflect its clarification of what is meant by "others."

7. After the Defendant files its Second Amended Answer and Affirmative Defenses, it shall amend its response to Interrogatory 10. To the extent that the Defendant intends to rely on privilege to withhold responsive information, it shall produce a privilege log with respect to any communications which occurred prior to the April 16, 2013 commencement of this action. To the extent that the Defendant has no further facts to provide other than those it sets forth in its Second Amended Answer and Affirmative Defenses, Defendant shall, on or before December 9, 2013, amend its response to Interrogatory 10 to make this clear.

8. On or before (ten days) the Defendant shall serve a response to Interrogatory 17.