**Maria G. PEÑA, Plaintiff,**

v.

**HANDY WASH, INC., et al., Defendants.**

Case No. 14–20352–CIV.

United States District Court, S.D. Florida.

Signed June 18, 2014.

Brian Howard Pollock, Fairlaw Firm, Miami, FL, for Plaintiff.

Keith Thomas Grumer, Grumer & Macaluso PA, Fort Lauderdale, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Plaintiff, Maria G. Peña's ("Peña['s]") Renewed Motion for Certification of Collective Action and for Permission to Send Court Supervised Notice to Employees of Their Opt-in Rights ... ("Motion") [ECF No. 26], filed April 7, 2014. The Court has carefully reviewed the Motion; Defendants' Response in Opposition ... ("Response") [ECF No. 39]; Plaintiff's Reply ... [ECF No. 44]; supporting exhibits; and applicable law. For the reasons that follow, the Motion is granted.

## I. INTRODUCTION [1]

Plaintiff, for herself and on behalf of a collective class, has brought a claim for failure to pay overtime compensation against Defendants, Handy Wash, Inc. ("Handy Wash"); Zuni Transportation, Inc. ("Zuni"); and Jorge Azor ("Azor") (collectively "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 216(b). (*See generally* Compl.). Plaintiff seeks declaratory relief in Count II. (*See id.* 6–8). Five other individuals have filed Notices of Consent to join this action as party plaintiffs: Hugo Ramirez–Valandia ("Ramirez–Valandia"), Mercy Carriel ("Carriel"), Arturo Labrada ("Labrada"), Fabio Gonzalo Valencia ("Valencia"), and Fernando Bernales ("Bernales") (collectively the "opt-in plaintiffs"). (*See generally* Declarations and Notices of Consent to Join ("Notices of Consent") [ECF Nos. 5–1, 7–1, 8–1, 11–1 & 11–2]).

Defendants provide paratransit service throughout South Florida, including offering nonemergency ambulatory and nonambulatory transportation to clients and patients. (*See* Compl. ¶¶ 2–4, 8–9). Zuni contracted with Miami–Dade County to offer paratransit service through a Paratransit Transportation Services Contract ... ("Paratransit Contract") [ECF No. 40–1]. (*See also* Affidavit of Jorge Azor ("Azor Affidavit") ¶ 9 [ECF No. 40]). In furnishing this paratransit service, Defendants retain employee drivers to complete Zuni routes, as well as independent contractor drivers who are paid at per-passenger rates without compensation for overtime worked. (*See* Compl. ¶¶ 14–15; Azor Aff. ¶¶ 10, 35–37). Despite the relatively simple, low-paying driver positions that Plaintiff and the class she seeks to represent held, Defendants misclassified these employees as independent contractors, circumventing federal law requiring the payment of overtime compensation and other benefits. (*See* Compl. ¶¶ 15–16). Defendants' annual gross revenue derived from interstate commerce is believed to be over

---

**1.** The facts are taken from the Complaint [ECF No. 1] and the declarations submitted by the parties. *See Davis v. Charoen Pokphand (USA), Inc.,* 303 F.Supp.2d 1272, 1275 (M.D.Ala.2004) (quoting *Hipp v. Liberty Nat'l* *Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001) (stating that district courts decide motions for conditional certification "based only on the pleadings and any affidavits which have been submitted" (citation omitted))).

$500,000 per year during the relevant time periods. (*See id.* ¶ 7).

In 2008, Defendants hired Peña to work as a driver. (*See id.* ¶ 10). Defendants required her to sign an independent contractor agreement, setting Peña's compensation and controlling all aspects of her employment. (*See* Azor Aff. ¶¶ 12, 14; *id.*, Peña Independent Contractor Agreement ("ICA"), 1–4 [ECF No. 40–3] ). Peña worked ten to twelve hours per day, Monday through Friday, and worked an additional ten to twelve hours two weekends each month, averaging sixty hours a week. (*See* Compl. ¶ 16). Given her work schedule, Peña could not simultaneously maintain other employment. (*See id.*).

Peña's job duties included picking up clients and patients and driving them to designated locations (*see id.* ¶¶ 10, 12); adhering to the daily schedule for pick-ups and drop-offs assigned by Defendants in a "Daily Trip Log" (Mot., Ex. C1, Declaration of Maria G. Peña ("Peña Declaration") ¶ 12 [ECF No. 26–2] ); cleaning and maintaining the vehicle to ensure it passed vehicle inspections (*see* Compl. ¶ 12); and following Defendants' policies and procedures of employment (*see id.*). Peña also wore a uniform shirt with Defendants' logo (*see id.* ¶ 12) and drove a vehicle owned or leased by Defendants with the words "Zuni Transportation" appearing on the vehicle's side (*see id.;* Peña Decl. ¶ 6). Defendants contributed to or paid for Peña's automobile insurance and provided her with a Nextel phone to communicate with Defendants' dispatchers. (*See* Compl. ¶ 13; Peña Decl. ¶ 20). Peña also used her personal cell phone to communicate with clients and patients regarding pick-ups and drop-offs. (*See* Peña Decl. ¶ 19).

Before starting work, Defendants required Peña to pass a background check and successfully complete training courses in defensive driving, courtesy driving, Americans with Disabilities Act awareness, and passenger assistance. (*See id.* ¶ 18). Defendants also accompanied and supervised newly hired employee drivers, including Peña, for approximately four hours at the beginning of each driver's employment. (*See id.*).

Peña seeks to represent and have notice sent to the following class of drivers:

> you are or were a driver for Handy Wash, Inc. d/b/a Independent Drivers Association, Zuni Transportation, Inc., and/or Jorge Azor, from January 30, 2011 to the present who worked more than 40 hours in a workweek and were paid as an independent contractor or did not receive overtime pay calculated at time and one-half your regular rate of pay. . . .

(Mot., Ex. D, 1 ("Notice Form") [ECF No. 26–7] ). The opt-in plaintiffs and prospective class are or were drivers employed by Defendants on a per-passenger rate, who held similar positions to Plaintiff, and who worked in excess of forty (40) hours during one or more work weeks but did not receive overtime compensation during the relevant time periods. (*See* Compl. ¶¶ 1, 14–16, 18). Plaintiff has submitted Declarations from herself and four other drivers who have stated they wish to join the suit. (*See generally* Mot., Exs. C1–C5 ("Plaintiff's Declarations") [ECF Nos. 26–2 to 26–6] ).

Plaintiff asserts she and the proposed class of current and former drivers exercised little to no discretion in their daily duties but were all erroneously classified as independent contractors so Defendants could avoid paying overtime compensation. (*See* Mot. 2–3, 5–6 (citing to Pl.'s Decls.)). According to Peña, drivers' daily routines were substantially similar: they would transport clients and patients between pick-up and drop-off locations as assigned

by Defendants. (*See* Peña Decl. ¶¶ 7, 24, 26). Independent contractor drivers did not require special skills; they lacked control over assignments; and they did not exercise discretion or management decisions, instead following instructions and assignments provided by Defendants. (*See id.* ¶¶ 17, 21–22). All drivers were evaluated based on the same set of standards, and all routinely worked in excess of forty hours a week in order to complete assigned Daily Trip Logs. (*See id.* ¶¶ 16, 24–27; *see generally* Pl.'s Decls.).

According to Defendants, the Motion should be denied for several reasons. Defendants challenge the sufficiency of the Declarations Plaintiff and the opt-in plaintiffs rely upon to show the misclassified independent contractor and employee drivers are "similarly situated." (Resp. 3; *see id.* 5–10). Defendants insist the misclassification claims of Plaintiff and the proposed class will require highly individualized, fact-intensive analysis that defeats the efficiencies of collective treatment (*See id.* 3, 10–12). Further, Defendants challenge Plaintiff's standing under the FLSA. (*See id.* 4–5).

## II. LEGAL STANDARD

■ The FLSA permits a plaintiff to bring a collective action on behalf of similarly-situated persons subject to the requirement that prospective plaintiffs file a written consent in the court where the action is brought. *See* 29 U.S.C. § 216(b); *Hipp,* 252 F.3d at 1216 (citations omitted). In the interest of judicial economy, district courts have discretionary power to authorize the sending of notice to potential class members. *See Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Notice should only be authorized in appropriate cases. *See Haynes v. Singer Co.,* 696 F.2d 884, 886 (11th Cir.1983). In order to grant conditional collective action certification, the Court must, at a minimum, satisfy itself that there are other employees who (1) are similarly situated with regard to their job requirements and pay provisions, and who (2) desire to opt into the case. *See Dybach v. Fla. Dep't of Corr.,* 942 F.2d 1562, 1567–68 (11th Cir.1991).

■ Regarding the first requirement, the plaintiff bears the burden of proving she and the class she seeks to represent are similarly situated. *See Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996). To evaluate whether a plaintiff has demonstrated the existence of a similarly-situated class, courts in the Eleventh Circuit utilize a two-tiered procedure that recognizes distinct burdens at different stages of the litigation process. *See Cameron–Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1243 n. 2 (11th Cir.2003) (citing *Hipp,* 252 F.3d at 1218 and collecting cases). The first tier—the one at issue in the present Motion—is referred to as the notice stage. *See id.* (quoting *Hipp,* 252 F.3d at 1218).

> At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.

*Id.* (quoting *Hipp,* 252 F.3d at 1218).

The second tier of analysis, re-examining the question of certification after dis-

covery is complete, follows a motion for "decertification" by the defendant. *Id.*

> At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives— i.e. the original plaintiffs—proceed to trial on their individual claims.

*Id.* (quoting *Hipp*, 252 F.3d at 1218).

 Regarding the second requirement, a plaintiff must show there are employees who would opt in if given notice. *See Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F.Supp.2d 1211, 1220 (M.D.Fla. 2003) ("[A] showing that others desire to opt-in must be made before notice is authorized." (alteration added; footnote call number and citation omitted)). Based on this showing, a "district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in'. . . ." *Dybach*, 942 F.2d at 1567 (alteration added). The burden is on the plaintiff to produce evidence demonstrating aggrieved individuals exist within the proposed class. *See Haynes*, 696 F.2d at 888 (holding the court properly declined to authorize notice to a prospective class where the only evidence presented was counsel's assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores). If the plaintiff does not satisfy her burden, the Court should decline the certification of a collective action "to avoid the 'stirring up' of litigation through unwarranted solicitation." *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1318 (M.D.Ala.2002)

(quoting *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 567 (N.D.Ala.1995)).

### III. ANALYSIS

Peña seeks conditional certification of the following class of individuals: "a putative class of those similarly situated—Defendants' current and former drivers—who performed work for Defendants in the State of Florida during the period of time from January 30, 2011 through the present." (Mot. 2). Peña asserts members of this class were subject to "misclassification" resulting in Defendants' "failure to pay overtime wages for all hours worked in excess of forty (40) per week." (*Id.*). Defendants challenge conditional certification on multiple grounds, arguing Peña and the class she seeks to represent are independent contractors exempt from the FLSA's overtime-pay requirements, and they are not similarly situated. (*See* Resp. 2, 4–10). Defendants contest the sufficiency of Plaintiff's allegations and evidence that the opt-in plaintiffs are similarly situated and further contend determining employee status entails a case-by-case analysis that will negate the judicial economy of class certification. (*See id.* 5–6, 10–12).

 The primary question at this notice stage is whether Defendants' "employees are similarly situated with respect to their job requirements and with regard to their pay provisions" and whether these individuals desire to opt-in. *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 675 (S.D.Fla.2013) (quoting *Bennett v. Hayes Robertson Group, Inc.*, 880 F.Supp.2d 1270, 1282–83 (S.D.Fla.2012)) (internal quotation marks omitted). As noted, the Court applies a "fairly lenient standard" at the notice stage in determining whether the class should be conditionally certified. *Hipp*, 252 F.3d at 1218. The rationale for this is that "at the early stages of litigation, plaintiffs have not had time to con-

duct discovery and marshal their best evidence." *Davis,* 303 F.Supp.2d at 1276 (citing *Hipp,* 252 F.3d at 1218).

## A. Evidence Opt-in Plaintiffs Are Similarly–Situated

■ Regarding the "similarly-situated" requirement, courts commonly consider five factors at the conditional-certification stage: (1) whether plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claimed violations are similar. *E.g., Rojas,* 297 F.R.D. at 677 (citations and internal quotation marks omitted). No single factor is dispositive. *Id.* (citation omitted).

■ Regarding the existence of similarly-situated potential plaintiffs, Defendants challenge Plaintiff's evidence and "generalized and conclusory allegations," the formulaic declarations by opt-in plaintiffs, and the failure to "engage" Azor's Affidavit. (Resp. 5; *see id.* 3–10). As evidence Peña and the opt-in plaintiffs are not similarly situated, Defendants rely on Azor's Affidavit, which describes certain differences in the drivers' employment relationships, terms of employment, and job responsibilities. (*See* Resp. 7–9). Defendants explain they employ two classes of drivers—independent contractor drivers and employee drivers. (*See id.* 7). Defendants stress Peña and the opt-in plaintiffs signed independent contractor agreements. (*See id.*).

Peña insists she satisfies each of five factors. Peña and the opt-in plaintiffs all held the same title and position of "independent contractors" ("driver[s]") for Defendants. (Mot. 15 (citing Pl.'s Decls.)). They all worked in the same geographic location in South Florida, transporting patients primarily within Miami–Dade County. (*See* Reply 3; Pl.'s Decls. ¶ 4). The alleged FLSA violations occurred during the same time period. Peña was a full-time driver for Defendants from 2008 until March 24, 2013, and she claims overtime pay from January 30, 2011 through March 24, 2013. (*See* Peña Decl. ¶ 4; Plaintiff's Notice of Filing Her Statement of Claim ¶ 2 [ECF No. 6]). The opt-in plaintiffs similarly claim overtime pay during the dates of their employment from January 30, 2011 to the present.[2] (*See* Notice Form 1; Reply 10). Considering these three initial factors, the potential plaintiffs appear to be similarly situated, and the balance favors granting conditional class certification.

Regarding the fourth and fifth factors, Defendants argue Peña and the other drivers were not subjected to the same policies and practices. Defendants explain contract drivers were paid different per-passenger rates and had the option to operate their own vehicles, lease-to-own Zuni's vehicles, or pay to use Zuni's vehicles. (*See* Resp. 7–8; Azor Aff. ¶¶ 5, 16–19). According to Defendants, contract drivers were treated differently from employee drivers in terms of the actual routes assigned and how drivers were notified of their route assignments. (*See* Resp. 9).

Plaintiffs need "only demonstrate that their positions are similar, not identical, to

---

**2.** Defendants employed Valencia from January 2007 until March 31, 2013; Ramirez–Valandia from October 2004 until March 2013; Labrada from October 10, 2005 until March 31, 2013; and Carriel from July 2000 until March 2010, and from July 2012 until February 24, 2014. (*See* Pl.'s Decls. ¶ 4).

the positions of the potential class plaintiffs." *Vondriska v. Premier Mortg. Funding, Inc.,* 564 F.Supp.2d 1330, 1335 (M.D.Fla.2007) (citing *Grayson,* 79 F.3d at 1096). " '[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage.' " *Id.* (alterations in original) (quoting *Scott v. Heartland Home Fin., Inc.,* No. 01:05–CV–2812–TWT, 2006 WL 1209813, at *3 (N.D.Ga. May 3, 2006)) (other citation omitted); *see also Gonzalez v. TZ Ins. Solutions, LLC,* No. 8:13-cv–2098–T–33EAJ, 2014 WL 1248154, at *4 (M.D.Fla. Mar. 26, 2014) ("Nor do TZ Insurance's affidavits pinpointing variations in the sales representatives' individual titles, schedules, and practices convince the Court that conditional certification is unwarranted." (citations omitted)).

Plaintiff contends the independent contractor drivers are similarly situated because all drivers were subjected to the same policies and practices pursuant to the Paratransit Contract. (*See* Reply 2–3). Plaintiff agrees with Defendants the Paratransit Contract governs the provision of paratransit service by Defendants, Peña, opt-in plaintiffs, and the putative class. (*See id.* 2). The Paratransit Contract outlines a limited geographic area, describes the same set of duties, code of conduct, and training required of all drivers/chauffeurs. (*See id.* 3 (citing Paratransit Contract ¶¶ 11.0, 22.9, 22.10 & 23)). Plaintiff also presents statements from Defendants' website describing the similar paratransit service provided by Defendants' drivers. (*See* Mot., Ex. B, 1–2 [ECF No. 26–1] & Ex. C1–2, 1–2 [ECF No. 26–2] ). Further, Peña and the opt-in plaintiffs assert they were subject to the same compensation policies, regardless if they received different per-passenger rates. (*See* Reply 3). The drivers were each paid on a per-passenger basis and were not paid over-

time. (*See id.*). The independent contractor agreements Peña and the opt-in plaintiffs signed are "near[ly] identical" other than the per-passenger rate. (Reply 3 (citation omitted)).

The operational set-up is similar for all contract drivers as well. Contrary to the statements made by Azor in his Affidavit, Peña and most of the opt-in plaintiffs state Defendants provided them vehicles (*see* Peña Decl. ¶¶ 6–7; Ramirez–Valandia Decl. ¶¶ 6–7; Labrada Decl. ¶¶ 6–7; Carriel Decl. ¶¶ 6–7); Valencia drove a vehicle with "Zuni Transportation" written on its side, but does not specify whether Defendants provided him with the vehicle (*see* Valencia Decl. ¶ 6). According to Azor, contract drivers absorbed all operational expenses, including gasoline, tolls, vehicle repair and maintenance. (*See* Azor Aff. ¶ 19). While Plaintiff's Reply is silent as to these expenses, Defendants' arguments suggest the class of contract drivers was treated the same. Additionally, according to Peña and the opt-in plaintiffs, Defendants provided them with automobile insurance and Nextel phones to communicate with dispatchers. (*See* Peña Decl. ¶¶ 14, 20; Valencia Decl. ¶¶ 14, 20; Ramirez–Valandia Decl. ¶¶ 14, 20; Labrada Decl. ¶¶ 14, 20). Although Defendants contend the contract drivers bore the cost of these additional expenses in the form of reduced wages, Defendants still paid for and provided these benefits. (*See* Resp. 7 (citing Azor Aff. ¶¶ 19–21)).

Defendants state it is unclear whether Peña and the opt-in plaintiffs were subject to the same direct management at the same site. (*See id.* 8–9). But Plaintiff's Declarations indicate the policies and practices were established in the same manner and by the same decision makers. Each "near[ly] identical" independent contractor agreement is signed by Handy Wash and the respective opt-in plaintiff driver.

(Azor Aff. ¶ 12). Handy Wash signed a Transportation Broker Agreement with Zuni to provide transportation services under Zuni's Paratransit Contract with Miami–Dade County. (*See id.* ¶¶ 11, 13). Both organizations appear to be under the same management, as Azor is the president of Zuni and a director of Handy Wash, and both businesses operate out of the same building in Miami–Dade County. (*See* Compl. ¶¶ 2–4; Azor Aff. ¶ 3). Accordingly, the totality of the factors favors conditional certification at the notice stage.

Defendants nevertheless insist the Court should discount Plaintiff's Declarations as "identical." (Resp. 1 n. 1). In finding Peña and the opt-in plaintiffs are similarly situated, the Court does not rely solely on Plaintiff's Declarations. Evidence of the similarity in the drivers' job functions comes from other sources already discussed, including the Paratransit Contract, Defendants' website, and the independent contractor agreements. Moreover, Defendants admit "Peña and the putative class members performed similar work...." (*Id.* 11).

This is not a case where evidentiary support for Plaintiff's position can only be found in "identical" declarations. *See Palacios v. Boehringer Ingelheim Pharm., Inc.,* No. 10–22398–Civ–UU, 2011 WL 6794438, at *5 (S.D.Fla. Apr. 19, 2011) (denying conditional class certification where plaintiff had attached "three almost identical, cut-and-paste declarations" and made assertions based on "beliefs" and "conversations" alone). Plaintiffs submissions have "successfully engage[d] [D]efendants' affidavit[ ] to the contrary." *Grayson,* 79 F.3d at 1097 (alterations added; citation omitted); *Reyes v. AT & T Corp.,* 801 F.Supp.2d 1350, 1359 (S.D.Fla.2011) ("To the extent that Defendant's mass of affidavit evidence supports the defense theory that there

are actually three positions encompassed by the Retail Account Executive category, however, I find Plaintiff 'successfully engaged' these affidavits by filing Urquhart and Roggensack's affidavits."). Here, Plaintiff submits five declarations in support, compared to Defendants' singular Azor Affidavit, and Defendants' own records and admissions support the conclusion the proposed class is similarly situated. To the extent the Azor Affidavit raises factual issues, those can be addressed at the decertification stage after discovery is complete.

In sum, application of the five factors in the similarly-situated review, *see Rojas,* 297 F.R.D. at 676–77, favors granting conditional class certification. As the Eleventh Circuit has emphasized, the Court is to analyze whether employees are similarly situated and "not whether their positions are identical." *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1260 (11th Cir.2008) (citing *Grayson,* 79 F.3d at 1096); *see also Gipson v. Sw. Bell Tel. Co.,* No. 08–CV–2017 EFM/DJW, 2009 WL 1044941, at *3 (D.Kan. Apr. 20, 2009) ("Variations among actual job title or some responsibilities does not preclude notice stage certification where all employees share general duties and the defendant denies overtime pay to all." (footnote call number omitted)). All proposed members of Plaintiff's class were drivers employed by Defendants who worked in the same geographic location in Miami–Dade County. The FLSA violations of failure to pay overtime compensation due to misclassification all occurred during the same time period, that is, from January 30, 2011 to present. All Plaintiffs are alleged to have been subjected to the same policies and practices of being denied overtime by Defendants, and there is no evidence the policies and practices were established in different ways by different decision makers, even though drivers were paid different per-passenger rates. Last, the ac-

tions, which constitute the violations claimed by Peña and the opt-in plaintiffs, are also similar in that all proposed class members were denied the payment of overtime compensation by virtue of how Defendants classified them.

### B. Evidence Employees Desire to Opt In

██ Under the second requirement, Plaintiff must establish a reasonable basis for the existence of other potential opt-in plaintiffs to justify certifying a conditional class. This burden "is not onerous." *Rojas*, 297 F.R.D. at 676. "[T]he existence of just one other co-worker who desires to join is sufficient to raise the Plaintiff's contention beyond one of pure speculation. . . . Courts in this District have conditionally certified classes with as few as two affidavits from potential plaintiffs." *Id.* (alteration in original; internal quotation marks and citations omitted) (citing cases). In addition to Peña, five drivers presently desire to opt-in and have filed consents to join. Further, Plaintiff's Declarations state Peña and the opt-in plaintiffs know of other current and former drivers employed by Defendants who performed the same type of work, were similarly undercompensated, and would desire to join a collective action if given notice of their rights. (*See* Pl.'s Decls. ¶¶ 24–30). Plaintiff has satisfied the Court "there are other employees of the [Defendant]-employer who desire to 'opt-in'. . . ." *Dybach*, 942 F.2d at 1567 (alterations added).

### C. Whether Peña and Potential Plaintiffs Are Independent Contractors

Defendants further challenge Plaintiff's Motion for conditional certification, arguing Peña lacks standing to bring this suit because she and the putative class are independent contractors who are exempt

from the FLSA's overtime-pay requirements. (*See* Resp. 4–6). Defendants rely on *Murray v. Playmaker Servs., LLC*, 512 F.Supp.2d 1273, 1276 (S.D.Fla.2007), and *Demauro v. Limo, Inc.*, No. 8:10–cv–413–T–33AEP, 2011 WL 9191, at *4 (M.D.Fla. Jan. 3, 2011), as support for denying class certification because the FLSA does not apply to independent contractors, and Peña and the opt-in plaintiffs each signed independent contractor agreements with varying terms (*see* Resp. 7–8, 13). According to Defendants, "consideration of this issue is case specific, and is seldom appropriate to certification as a collective action. . . ." (Resp. 6 (citing *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, No. 11–24432–CIV, 2012 WL 1933553, at *5 (S.D.Fla. Apr. 10, 2012); *Demauro*, 2011 WL 9191, at *3)).

██ Defendants ask the Court to decide the employee status of Peña and the opt-in plaintiffs, an issue central to this case, or in the alternative, to deny conditional certification because establishing that Peña "was misclassified, and that other similarly situated misclassified employees exist" (Resp. 6), will require a fact-intensive, individualized analysis (*see id.* 6, 11). Whether employees are similarly situated for conditional certification is "viewed in light of the nature of the claims and defenses applicable to a particular action." *Gutescu v. Carey Int'l, Inc.*, No. 01–4026–CIV–MARTINEZ, 2003 WL 25586749, at *10 (S.D.Fla. July 21, 2003). To the extent courts consider misclassification in deciding whether collective treatment is proper, it is in the context of deciding if the economic realities of the employment relationship will require individualized, fact-intensive discovery, an issue the Court addresses in the next section.

██ Whether Plaintiff and the class she seeks to represent were in fact mis-

classified as independent contractors goes to the heart of this case. "[I]n making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action." *Rojas,* 297 F.R.D. at 675 (alteration in original) (quoting *Pares v. Kendall Lakes Auto., LLC,* No. 13–20317, 2013 WL 3279803, at *3 (S.D.Fla. June 27, 2013)). Notably, at this first-tier inquiry, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Devries v. Morgan Stanley & Co. LLC,* No. 12–81223–CIV, 2014 WL 505157, at *7 (S.D.Fla. Feb. 7, 2014) (internal quotation marks and citation omitted). Even in the cases Defendants cite as support for denying certification, including *Demauro, Bedoya,* and *Pfaahler v. Consultants for Architects, Inc.,* No. 99–C–6700, 2000 WL 198888, at *2 (N.D.Ill. Feb. 8, 2000), none definitively determined a plaintiff's status as an employee or an independent contractor on a motion for conditional class certification. (*See* Resp. 10–11).[3] Consequently, it is premature to determine whether Peña and the opt-in plaintiffs are improperly classified as independent contractors at this first-tier inquiry.[4]

### D. Whether Highly Individualized, Fact–Intensive Discovery Will Result

Defendants challenge the propriety of conditional class certification on the basis that individualized inquiries make litigating as a collective action inefficient in misclassification cases such as this one. (*See* Resp. 5, 10–12). Although Peña and potential class members performed similar work as drivers, Defendants contend the individualized analysis required to assess the employee status of each driver for FLSA purposes precludes class certification. (*See id.* 11–12 (citing cases)). For example, Defendants stress the differences between drivers, including the types of vehicles driven, whether Defendants owned them, the routes assigned, and the per-passenger rates. (*See id.* 12).

"The 'economic realities' test is employed in FLSA cases to determine whether an individual is an employee versus an independent contractor for pur-

---

**3.** Defendants also rely on *Murray* (*see* Resp. 10), but the district court there determined the plaintiff was an independent contractor on a motion for summary judgment, not a motion to certify a conditional class. *See id.,* 512 F.Supp.2d at 1277.

**4.** The fact that Peña and the opt-in plaintiffs signed independent contractor agreements is not dispositive of the actual employment relationship, as Defendants would have the Court believe. "To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.,* 721 F.3d 1308, 1311 (11th Cir.2013) (citations omitted); *Donovan v. The New Floridian Hotel, Inc.,* 676 F.2d 468, 471 (11th Cir.1982) (That a business "may not have had the intention to create an employment relationship is irrelevant."). "This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'" *Scantland,* 721 F.3d at 1311 (citations omitted) (reversing in part district court's finding on summary judgment that cable repair technicians were independent contractors, and remanding the case upon finding that issues of material fact remained regarding plaintiffs' employee status after assessing the economic realities of the parties).

poses of the Act." *Aidone v. Nationwide Auto Guard, LLC,* 985 F.Supp.2d 1346, 1349 n. 1 (S.D.Fla.2013) ("An employee is an individual 'who as a matter of economic reality [is] dependent upon the business to which [he] render[s] service.'" (alterations in original; citation omitted)). In making this determination, courts consider the following "economic realities" factors:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship; [and]
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Altman v. Sterling Caterers, Inc.,* 879 F.Supp.2d 1375, 1380 (S.D.Fla.2012) (alteration added; citations omitted). "[T]hese six factors are a guide, are not exhaustive and no single factor is dispositive." *Id.* at 1381 (alteration added; citation omitted). The factors are also relevant to assessing whether Plaintiff and the class she seeks to represent are similarly situated. *See Gutescu,* 2003 WL 25586749, at \*10 (considering the factors under the "economic realities test" in determining whether plaintiffs are similarly situated in order to certify a conditional FLSA class).

Citing *Demauro,* Defendants emphasize the economic realities test will result in a "necessarily · individualized assessment [that] eviscerates all notions of judicial economy." (Resp. 12 (alteration added; internal citation and quotation marks omitted) (quoting *Demauro,* 2011 WL

9191, at \*3–4)). The facts in *Demauro* are distinguishable. In that case, defendants submitted "numerous declarations of ExecuCar drivers who do not claim to be employees, but rather who state that they prefer to be independent contractors who are not entitled to the FLSA's overtime provisions." *Demauro,* 2011 WL 9191, at \*4 n. 5.

The Court is not persuaded an inherently individualized analysis "ill-suited to collective action treatment" is sure to result. *See Walker v. Honghua America, LLC,* 870 F.Supp.2d 462, 470 (S.D.Tex.2012) ("Contrary to Defendant's assertion, many courts have granted conditional certification in FLSA cases involving disputes over whether workers were misclassified as independent contractors." (citing cases)). In the present case, it appears the majority of the economic realities factors can be assessed collectively. *See Carrera v. UPS Supply Chain Solutions, Inc.,* No. 10–60263–Civ–Lenard/Turnoff, 2011 WL 1303151 (S.D.Fla. Mar. 31, 2011) [ECF No. 169], 14–15 (order adopting in part magistrate judge's recommendation and granting FLSA conditional certification) ("The Court also recognizes the issue of whether the opt-in plaintiffs are properly classified as independent contractors or [Defendant's] employees requires an individualized analysis of such factors as the nature and extent of [Defendant's] control, the plaintiff's opportunity for profit or loss, the plaintiff's investment, whether the services required a special skill, the permanency of the relationship, and whether the service is an integral part of [Defendant's] business.... Many of the issues ... can be resolved or addressed as part of a collective action and perhaps in a much more efficient manner than would otherwise be the case." (alterations added; internal citations omitted)).

■ The six economic realities factors heavily overlap with the similarly-situated analysis already performed. Defendants oversee the manner in which the drivers' work is performed and ensure drivers comply with the Policy Manual and the requirements of the Paratransit Contract, which required Zuni to monitor performance levels and standards of conduct for drivers, and ensure compliance with mandatory standardized training and minimum requirements for vehicles. (See Reply 3). Independent contractor drivers lacked control over assignments and did not exercise discretion or make management decisions, instead following dispatch assignments provided by Defendants. (See Pl.'s Decls. ¶¶ 21–22). Although drivers were required to complete certain basic training, the position did not require any special skills. (See id. ¶ 17). As discussed, Defendants provided the opt-in plaintiffs with vehicles, automobile insurance, and a Nextel phone to communicate with dispatchers. (See id. ¶¶ 6–7, 14, 20). The extent the independent contractor drivers' services were an integral part of Defendants' business is unclear as Defendants also have employee drivers responsible for routes. But Defendants clearly rely on drivers to provide paratransit service to clients in Miami–Dade County.

Admittedly, several of the economic realities factors will require a more individualized analysis, including the degree of permanency and duration of the working relationship, facts specific to each driver. The dates of employment for Peña and the opt-in plaintiffs differ. Additionally, Defendants assert some independent contractor drivers, such as Ramirez–Valandia, were incorporated, while others worked in their individual capacities. (See Resp. 8 (citing Azor Aff. ¶ 23)). Whether potential plaintiffs were incorporated or had the ability to employ others to accomplish their duties may also require an individual-

ized assessment. Ramirez–Valandia's independent contractor agreement is between Handy Wash and Hugo's Driver Corp., and Ramirez–Valandia identifies himself as the president of Hugo's Driver Corp. (See Azor Aff., Ramirez–Valandia ICA, 5–9 [ECF No. 40–3]). Nonetheless, the issue of incorporation is not cause to deny certification at the notice stage. Of the opt-in Plaintiffs, there is only evidence Ramirez–Valandia was incorporated. Whether other opt-in plaintiffs were incorporated may be considered at the second-tier inquiry. Peña and the opt-in plaintiffs are similarly situated even considering the economic realities of their employment. Defendants may raise the issue of the fact-intensive nature of any class treatment on a motion to decertify, after discovery has concluded.

Finally, it is worth noting Defendants' argument that the contract drivers are a distinct class of drivers uniformly exempt from the FLSA supports a finding the drivers are similarly situated. See Rojas, 297 F.R.D. at 678 ("Uniform classification of a group as exempt under the FLSA, even if not sufficient to prove that the group is similarly situated for the purposes of class certification, certainly does not suggest that the group must be dissimilar . . . [and] cuts against any suggestion that a highly individualized analysis of the issue of exemption is necessary within the group of drivers/messengers themselves." (alterations added)).

### E. The Proposed Class Notice

Last, Defendants take issue with the notice proposed by Plaintiff. Defendants challenge the range of dates and scope of the class of drivers identified by Plaintiff in her Motion. (See Resp. 2). Plaintiff explains the dates noted in the Motion are a typographical error. (See Reply 10). The correct dates are included on the No-

tice Form—January 30, 2011 to present. (*See id.* 10 n. 6).

Defendants also insist the putative class should be narrower as Plaintiff's proposed class includes drivers for Handy Wash, Zuni, and/or Azor, from January 30, 2011 to the present who worked more than 40 hours in a workweek and were paid as independent contractors or did not receive overtime pay. (*See* Notice Form 1). The Motion describes a class of drivers who were misclassified as independent contractors, but the language in the proposed Notice Form is overly broad. The Notice Form includes all current and former drivers who did not receive overtime pay calculated at time and one-half the regular rate, without distinguishing between misclassified independent contractors and employee drivers. Only prospective plaintiffs, who were misclassified as independent contractor drivers and who worked over forty (40) hours per week without proper overtime compensation, are similarly situated to Peña and the other opt-in plaintiffs.

Another objection raised by Defendants is the putative class proposed by Plaintiff fails to distinguish between contract drivers employed by Zuni and those employed by Handy Wash, as well as the different routes assigned to drivers. (*See* Resp. 2). A court may decertify the class or assign subclasses of plaintiffs as appropriate after discovery is complete, thus addressing Defendants' additional concerns regarding the scope of drivers included in the conditional class. (*See* Reply 10 (citing *Dice v. Weiser Sec. Servs., Inc.,* No. 06–61133–CIV, 2008 WL 249250, at *1 (S.D.Fla. Jan. 29, 2008) ("The Court finds it is not prohibited from creating a subclass in this case and the creation of such a subclass would best serve considerations of convenience, cost, judicial economy, and expeditious trial process.")))

Defendants do not otherwise object to the form of the notice suggested in the Motion and the attached Notice and Consent Forms (*see generally* Resp.; Mot, Exs. D & E), including: the ten-day timeframe for providing Plaintiff with names and last known addresses, telephone and fax numbers, and email addresses for potential class members (*see* Mot. 17, 21); the length of the notice period and tolling the statute of limitations (*see id.* 9); the means for notification—emailing, faxing, mailing, and conspicuously posting at Defendants' workplace the Notice and Consent Forms (*see id.* 18–21), as well as including the forms in the next paycheck/paystub Defendants provide employed drivers (*see* Mot. 21).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Conditionally Certify a FLSA Collective Action and Facilitate Notice to Potential Class Members [**ECF No. 26**] is **GRANTED.**

2. Plaintiff's unopposed request to toll the statute of limitations period for potential opt-in plaintiffs as of February 28, 2014 is granted.

3. The parties are directed to meet and confer and submit to the Court the revised language for the Notice and Consent Forms by **June 25, 2014.** Should the parties be unable to accomplish this task by this deadline, a hearing will be scheduled by separate order to allow the parties and the Court to address the matter orally.